```
        THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                              NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,       )     Case No. 1:04CR00149 DS

          Plaintiff,            )

     vs.                        )     MEMORANDUM DECISION AND
                                      ORDER ADDRESSING MOTION TO
LARRY MCKAY MAXFIELD,                 SUPPRESS EVIDENCE
                                )

          Defendant.            )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I.  INTRODUCTION

Defendant Larry Maxfield moves to suppress evidence seized from his place of business, his vehicles and his person during a narcotics investigation on September 21, 2004. An evidentiary hearing was held, followed by post hearing briefing.

The relevant facts are these. On September 21, 2004, Agent Tim Barlow ("Barlow") of the Davis Metro Narcotics Strike Force received information from Weber Morgan Narcotics Task Force Agent Watanabe ("Watanabe") regarding information obtained from a confidential informant ("CI #1"). The information was that Defendant and a Wyatt Ercanbrack had purchased four gallons of naptha and xylol at an Ace Hardware store located in Roy, Utah, on August 28, 2004, for the purpose of manufacturing methamphetamine. Barlow, who was aware that these chemicals are commonly used in the

manufacture of methamphetamine, verified the purchase by Defendant that same day by reviewing the Ace Hardware surveillance video.

Barlow also received information from Watanabe about a different confidential informant ("CI #2") who reported that a Cory Jensen, who would be driving a white Dodge truck, was going to meet Defendant at an automotive shop named Pursuer Auto L.L.C. (the "Shop") located at 1867 West 1700 South in Syracuse, Utah, for the purpose of cooking methamphetamine.

Based on this information, officers set up surveillance at the Shop in the evening hours of September 21, 2004. A white truck was observed at the site, but left shortly after surveillance began. People were observed moving behind a privacy fence. As Agent Hernandez approached a nearby insurance business to set up surveillance on the Shop, a black Camaro drove down the street and pulled into the driveway that accessed the Shop and part of the insurance building. The Camaro stopped for several seconds approximately 15 feet from Agent Hernandez. Because he was concerned that the Camaro was connected to the Shop, Agent Hernandez approached a parked car in front of the insurance business as if he were going to leave. The Camaro proceeded to the Shop where it remained for a few moments before leaving. Agent Hernandez made arrangements with the owner of the insurance

business to conduct surveillance from inside that business.  Agents Joseph and Howard and Lieutenant Swanson were assisting with surveillance and were located in the parking lot of  a professional building east of the Shop when the Camaro drove past the parking area and flashed its lights at Lieutenant Swanson.  The Camaro drove away, but came back through the parking area a second time in what appeared to be an effort to illuminate the officers' vehicles.

Agent Howard joined Agent Hernandez at the insurance building. Several minutes later the Camaro pulled up to the Shop and backed up to a door on the east side.  The driver of the Camaro opened the trunk and went inside the Shop.  Thereafter, a bag either was placed inside the trunk or taken out of the trunk, and a person drove the  Camaro past the insurance building with it's lights off and stopped next to a window from which Agents were conducting surveillance.  The window of the Camaro was down and Agent Howard identified Defendant as the driver.

Officers also had information that Defendant was associated with a white Honda, which was observed by Agent Joseph driving through the parking lot where his vehicle was parked and proceeding back to where Lieutenant Swanson's vehicle was parked, where it stopped for 20 to 30 seconds.

Agents believed that the Defendant and the driver of the white Honda were conducting counter-surveillance of their activities and were concerned that there could be people inside the Shop who could be moving or destroying evidence.

Agents then advised Barlow and Agent Miya, who were with attorney Mike Direda, of their observations and concerns. Agents were advised to detain Defendant until a search warrant was obtained.

At approximately 10:00 p.m., the Camaro was stopped. Defendant was frisked for weapons, put in handcuffs, placed in the back of a police car and taken to the Clearfield Police Department where he was kept in a holding cell. In Defendant's pocket officers found a small plastic bindle of methamphetamine as well as keys and an alarm key pad to the Shop, which agents would later use to gain entrance to the Shop.

Agent Joseph drove the Camaro back to the Shop so it could be searched after the warrant was obtained. On his way, the white Honda pulled up next to the Camaro and the female driver asked Agent Joseph why he was driving her car. The white Honda was stopped and the driver, Tricia Maxfield, was detained. The Honda

was also driven back to the Shop so that it could be searched after the warrant was signed.

Agents returned to the Shop and were concerned that they had been compromised due to what they believed were counter-surveillance measures. There were vehicles parked in front of the Shop, but because the Shop windows were covered, agents were not able to see inside. Agent Joseph, who was in charge, ordered that the Shop be secured so that any evidence could be preserved from possible destruction and to avoid any harm to officers. Agents entered and searched the Shop for anyone who might be hiding and then waited three to four minutes before they got word that a warrant had been signed. Thirty to forty minutes elapsed from the time Defendant was stopped in the Camaro until agents entered the Shop.

Subsequent to the Shop being searched, Agent Hernandez interviewed Defendant at the Clearfield Police Department after advising him of his Miranda rights. This occurred approximately three hours after Defendant was seized. When questioned about pills that had been found in the Shop, Defendant acknowledged that pills were scattered throughout the Shop and described where pills were located. He stated that he was gathering the pills for other people, but that he was not operating a meth lab. Defendant also

stated that he thought something was going on earlier near the Shop, because he noticed that the computer screen in the insurance business, which was always on and visible through the window, had been turned off.

After advising him of his Miranda rights, Agent Barlow also interviewed Defendant, who admitted that he was collecting the pseudoephedrine pills to give to other individuals for the production of methamphetamine, and that everything in the Shop belonged to him and that Tricia had nothing to do with anything that was going on in the Shop.

After being questioned by the two officers, Defendant was transported and booked into the Davis County Jail at 4:30 a.m., some six and one half hours after he first was detained.

## II.   DISCUSSION

### A.   Standing

For purposes of the present motion, the Court is not persuaded by the Government's assertion that Defendant lacks standing to contest the search of the Shop, or the white Honda driven by Tricia Maxfield, or the gold Nissan parked at the Shop.  "The proponent of a motion to suppress has 'the burden of adducing facts at the suppression hearing indicating that his own rights were violated by

the challenged search.'" *United States v. Gama-Bastidas*, 142 F.3d 1233, 1238 (10th Cir. 1998)(citation omitted).  Here, the Government's own witnesses testified that the Shop belonged to Defendant and that the Shop was Defendant's leased premises. Government witnesses also testified that titles to the subject vehicles were held by Defendant, either individually or jointly in conjunction with Tricia Maxfield.  The gold Nissan was also parked at the site acknowledged by officers to be Defendant's business premises. "[A] defendant may establish a reasonable expectation of privacy by presenting evidence of some lawful control or possession of the vehicle."  *Id*. at 1239.  This Defendant has done.  The evidence also supports the conclusion that Defendant's expectation of privacy was objectively reasonable.  See *id*.

**B. Exigent Circumstances**

**1.  Warrantless Entry of Shop**

Defendant asserts that his Constitutional rights against illegal search were violated when officers entered and searched the Shop without a warrant.  The Government contends that officers were justified by exigent circumstances in making a warrantless entry into the Shop.  Although officers entered the Shop without a warrant, the record reflects that the scope of their search was limited to assuring the no one was hiding inside.

"[A]bsent consent or exigent circumstances, police may not enter a citizen's residence without a warrant." *United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1996), *cert. denied*, 520 U.S. 1149 (1997). *See O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004)(citation omitted)("'Though physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' ... its protection extends to any area in which an individual has a reasonable expectation of privacy."). In *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988), the Tenth Circuit articulated four requirements for a permissible warrantless entry when the police fear the imminent destruction of evidence.

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of an unknown suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances when the destruction of the evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

The Government bears the burden of proving that sufficient exigency exists. *Id*. at 1271. In evaluating exigent circumstance the Court should "evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." *United States* v. *Cuaron*, 700 F.2d 582, 586 (10th Cir., 1983) (internal quotation marks and citations omitted).

Officers claim that they had reason to believe that their presence had been detected due to what they believed were counter-intelligence efforts by Defendant and his girlfriend, Tricia Maxfield. They were concerned that their discovery could have been communicated to others inside the Shop. When officers first arrived to conduct surveillance of the Shop they observed people near the Shop moving around behind a privacy fence. Various vehicles were parked at the Shop, including a white truck, which was consistent with one alleged to be driven by Cory Jensen, identified by CI #2 as someone who was going to assist Defendant with the manufacture of methamphetamine.

However, officers acknowledge that they had no way of knowing whether Jensen or anyone else was inside the Shop because the Shop windows were covered. They had no independent knowledge that any drug contraband was inside the Shop, or, if present, that its destruction was imminent. It also is noteworthy that thirty to forty minutes elapsed from the time Defendant was stopped until officers entered the Shop. Such a lapse in time, in the Court's view, argues against exigency. Had a confederate of Defendant been tipped off about officers' intentions, enough time had expired for any evidence to have been destroyed or removed. Additionally, officers were in the process of obtaining a search warrant, which in fact was obtained minutes after officers entered the Shop.

Under the totality of circumstances, the Court concludes that the Government has failed to prove that the warrantless entry into the Shop by officers was justified by exigent circumstances.

### a.  *Segura* **Analysis**

Pursuant to *Segura v. United States*, 468 U.S. 796 (1984), the Government contends that, even if the warrantless entry into the Shop was not justified by exigent circumstances, they were entitled to secure the Shop while they obtained a search warrant.  The Court agrees.

*Segura* examined the issue of whether "an earlier illegal entry ... requires suppression of evidence seized later from a private residence pursuant to a valid search warrant which was issued on information obtained by the police before the entry into the residence."  *Id*., 468 U.S. at 797-98.  The Court held that it did not.  In this case issuance of the search warrant was unrelated to the initial warrantless entry.  None of the information relied upon to obtain the warrant was related to the initial warrantless entry.  The Court, therefore, concludes that evidence obtained from the Shop was seized pursuant to a validly issued search warrant.

## 2.  **Warrantless Seizure of Defendant and his Vehicle**

Defendant contends that he was illegally stopped and detained and his vehicle unlawfully moved to the Shop for the sole purpose of searching it in an area described in the search warrant.

The Government contends that officers had probable cause to believe that Defendant and his vehicle were associated with a methamphetamine lab based on information from CI's #1 and #2, based on their observations while conducting surveillance, and because they had seen Defendant either place something in, or take something out of, his vehicle's trunk while it was parked at the Shop.  These facts, along with the need to prevent Defendant from alerting anyone back at the Shop of the agents' intentions, the Government suggests, constitute exigent circumstances justifying the stop and detention of Defendant.  The Court disagrees.

"A warrantless seizure of an automobile and its occupants may be reasonable if predicated on probable cause and exigent circumstances."  *United States v. Gama-Bastidas*, 142 F.3d 1233, 1239 (10th Cir. 1998).  The Government cites *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993), for the preposition that if officers believe that their own lives or the lives of others are at risk, an exigent circumstance is present and a warrantless search can be made.  Based on the same

11

authority, the Government similarly urges that fear that evidence might be destroyed also creates an exigent circumstance as long as that fear is "'supported by clearly defined indications of exigency that are not subject to police manipulation or abuse,'". *Id*. (internal citations omitted).

The Government, however, by its own admission acknowledges that "[w]hen the agents stopped the Defendant they had no way of knowing whether or not he had a methamphetamine lab in his vehicle." Mem. Opp'n at p.11. Besides the information that they received from the two confidential informants, agents only knew that someone either took a bag out of, or put a bag in, the trunk of a black Camaro, and that Defendant and someone in a white Honda behaved in a manner suggestive of surveillance. Officers had not independently ascertained any additional indicia of the presence of drugs or contraband, either at the Shop or within the Camaro. The evidence of exigency is simply insufficient to justify the warrantless seizure and search of Defendant or his automobile.

To have evidence suppressed as the fruit of his unlawful seizure, Defendant must establish both illegal police activity and some nexus between the illegal police activity and the evidence obtained. *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001). The former being established, the Court looks to see if a

nexus exists between the illegal police activity and the bindle of methamphetamine and his confession while in custody.  "In order to show such a factual nexus, at a minimum, [Defendant] must adduce evidence ... showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." *DeLuca*, 269 F.3d at 1132 (internal quotation marks and citations omitted).  It appears clear that but for his unlawful seizure and search, the bindle of methamphetamine would not have been discovered by police.  Additionally, notwithstanding that officers ultimately gave Defendant a Miranda warning, the voluntariness of his confession must be questioned because of his unlawful seizure and detention.  Defendant was taken into custody at approximately 10:00 p.m., restrained in handcuffs and transported in a police car to a police station where he was held in a holding cell for almost three hours before being Mirandized and questioned.  The overriding consideration in "fruits" cases, according to the Supreme Court, is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).  Here it appears clear that Defendant's incriminating statements were "come at" by the exploitation of his unlawful seizure and detention.  Under the totality of circumstances, the

Court must conclude that the taint from Defendant's illegal seizure and search had not become sufficiently attenuated so as to permit admission of his incriminating statements.

### 3. Validity of Warrant

Defendant asserts that the warrant authorizing search of the Shop, and the affidavit in support of the search warrant, were not sufficiently specific and lacked probable cause. Defendant urges that reference to a white Dodge truck in Agent Barlow's affidavit lacked specificity because it failed to include information such as model, license plate number, and lacked detail regarding such things as color, tinted windows, accessories etc. Defendant also contends that the description of items to be seized was overly broad. He further asserts that there is no basis to determine the reliability of the confidential informants referenced in the affidavit.

The decision of the judge issuing a search warrant is to be given great deference. *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005). A court reviewing a search warrant "need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a '"substantial"' basis for determining that probable cause existed". *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir.)(internal citation omitted),

*cert. denied*, 534 U.S. 886 (2001). Probable cause exists when the affidavit "sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Untied States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 535 U.S. 945 (2002).

The Court concludes that Agent Barlow's affidavit in support of a search warrant provided sufficient information for the issuing judge to conclude that probable cause existed for issuance of the search warrant. Barlow's affidavit recites information from CI #1 that Defendant purchased four gallons of naptha and xylol from Ace Hardware. The veracity of that allegation was independently verified by Agent Barlow when he reviewed the store's security tape. Defendant's suggestion that the purchase of those chemicals was consistent with his operation of an auto body Shop does not discount Agent Barlow's knowledge, that those chemicals are used to make methamphetamine, when coupled with the report of CI #1 and CI #2 that Defendant was intending to manufacture methamphetamine. Barlow's affidavit also recites information from CI #2 that a Cory Jensen, driving a white Dodge truck, would be meeting Defendant at Purser Auto located at 1867 West 1700 South, Syracuse, Utah, to cook methamphetamine. That information was partially independently

verified  when the presence of a white truck was observed at the Shop.

Finally, the Court is satisfied that the descriptions in the warrant of the items to be searched and/or seized were sufficiently specific.  The warrant clearly describes the Shop and its location, and identifies  items to be searched or seized to include, any vehicles associated with the Shop at the time of the execution of the warrant, and controlled substances including specific drug paraphernalia and chemicals used for the manufacturing of methamphetamine.

### III.   CONCLUSION

For the reasons set forth, Mr. Maxfield's Motion to Suppress is granted in part, and denied in part.  Because the Court finds that the seizure and search of his person and his Camaro automobile were unlawful, evidence seized or which is the fruit of those events, specifically the bindle of methamphetamine found on his person and his confession while in custody pursuant to that seizure are suppressed.

Although, the Court finds that the warrantless entry of his place of business was unlawful, the  evidence seized from his Shop pursuant to a validly issued search warrant was lawfully obtained

and need not be suppressed.  Other than as noted, Defendant Maxfield's Motion to Suppress is denied.

IT IS SO ORDERED.

DATED this 24th day of August, 2006.

                                    BY THE COURT:

                                    *[signature]*

                                    DAVID SAM
                                    SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT